WILLIAM DUNN, Appellant, v. ZWILLING BROTHERS, *et al.*

**Trusts:** PAROL EVIDENCE. An agreement that the holder of a preexisting second mortgage on land once owned by plaintiff, might get sheriff's deed on that and on the first mortgage, to cut off the liens, that the land should be leased to plaintiff and that when the stipulated rent equaled a stated sum, there should be a reconveyance to plaintiff, creates an express trust which must be declared in writing, as Code, 1934, provides.

SAME. This is so though plaintiff went into possession under a lease, paid rent stipulated in it, made improvements and treated the land as his own; no claim being made that the transaction created a contract for the transfer of an interest in land under which said rent payments should be treated as a part of the purchase price.

FRAUD. A refusal to perform and a denial of such agreement are not a fraud enabling it to be dealt with as a constructive trust.

**Practice.** There can be no resulting trust when an express agreement is relied upon.

| 94 | 233 |
| --- | --- |
| 97 | 111 |
| 97 | 717 |
| 100 | 293 |
| 94 | 233 |
| 104 | 586 |
| 94 | 233 |
| 108 | 95 |
| 94 | 233 |
| 107 | 136 |
| 107 | 227 |
| 94 | 233 |
| 114 | 525 |
| 94 | 233 |
| 115 | 329 |
| 115 | 331 |
| 94 | 233 |
| 117 | 502 |
| 94 | 233 |
| 120 | 251 |
| 94 | 233 |
| 130 | 468 |
| 94 | 233 |
| 131 | 115 |
| 94 | 233 |
| 133 | 244 |
| 94 | 233 |
| 135 | 185 |

*Appeal from Hardin District Court.*—Hon. S. M. Weaver, Judge.

Friday, April 5, 1895.

Action in equity for the specific performance of an alleged agreement to convey real estate, for an accounting, and for general equitable relief. A demurrer to the petition was sustained, and, the plaintiff refusing to plead further, judgment was rendered in favor of the defendants for costs. The plaintiff appeals.— *Affirmed.*

*Binford & Binford* and *T. Brown* for appellant.

*Binford & Snelling* for appellees.

Robinson, J.—The material facts stated in the petition and admitted in the demurrer are substantially as follows: In June, 1887, the plaintiff owned in fee simple four hundred acres of land in Hardin county. He was indebted to Peter Binford in the sum of about three thousand five hundred dollars, to Zwilling Bros. in the further sum of one thousand six hundred dollars, and to the Iowa Loan & Trust Company for about five hundred dollars. The amount due Binford was secured by a mortgage on two hundred and forty acres of the land, and that to Zwilling Bros. was secured by a mortgage on eighty acres of the land included in the mortgage to Binford, and on one hundred and sixty acres in addition. The indebtedness to Binford had been reduced to judgment, the mortgage securing it had been foreclosed, and a sale of the land covered by the mortgage had been made to Binford in the preceding November, to satisfy the judgment. The plaintiff was entitled to redeem from

the sale, and his right to do so did not terminate until the twentieth of November, 1887. He was financially embarrassed, however, and unable to pay the indebtedness specified, from his own funds. In April, 1887, he entered into an oral contract with Zwilling Bros., by which they agreed to advance to him sufficient money to pay the debts against the property, including taxes then due and to become due. As a part of the transaction, they were to purchase of Binford, and receive as collateral security his certificate of purchase, and their own mortgage was to be considered a part of the loan. They were to maintain the plaintiff in the possession of the property, and he was to pay them not less than the sum of one thousand dollars each year, with interest at the rate of eight per cent. per annum, until the indebtedness should be paid. Zwilling Bros. were to hold the land as security for the money they advanced, and were to have the right to take a deed under the Binford purchase, and to foreclose their own mortgage, if they elected so to do, or to redeem under their mortgage, and take a deed thereunder to cut off other lienholders, and hold the sheriff's deed they should so obtain as collateral security. Leases for the premises were to be made, by which the plaintiff agreed to pay to Zwilling Bros. one thousand and fifteen dollars each year to the first day of March, 1894. The sums to be so paid were to apply on the indebtedness due from the plaintiff, first satisfying the annual interest at eight per cent. per annum, and all taxes. The plaintiff was to have the right to pay the entire amount which should be advanced by Zwilling Bros., including taxes, interest, and costs, at any time he should desire to do so, and when that was done they were to reconvey the premises to him. Zwilling Bros. foreclosed their mortgage, and purchased the premises included therein at foreclosure sale, redeemed from the Binford sale,

and obtained an assignment of the certificate to him
and purchased the claim of the Iowa Loan & Trust
Company. They also redeemed the land from tax
sale, and paid the taxes thereon. The plaintiff signed
leases for the property each year, and gave his notes
for one thousand and fifteen dollars, nominally as rent,
but really as payments by virtue of the agreement.
All this is alleged to have been done under their agree-
ment with the plaintiff. It is further shown that the
plaintiff paid to them various sums of money at differ-
ent times, and that, after deducting payments so made,
there was due to Zwilling Bros. on the first day of
March, 1894, for all sums of money they had paid and
advanced under the agreement, the amount of three
thousand two hundred and sixty-five dollars and
eighty-five cents. Daniel Zwilling and H. A. Zwilling,
as copartners, constituted the firm of Zwilling Bros.,
and sheriff's deeds for the premises were issued to them
under the sale to Binford and the one to Zwill-
ing Bros. The plaintiff complied with the
agreement on his part, remained in possession
of the land continuously, and treated it as his own, con-
structing fences, digging ditches, and making other
valuable improvements. The mortgage to Zwilling
Bros. was junior to the Binford mortgage on so much
of the land as was included in both. In August, 1887,
Zwilling Bros. redeemed from the sale to Binford, and
entered in the sale book, under the provisions of section
3115 of the Code, a statement to the effect that the sum
of one thousand five hundred dollars was the utmost
amount they were willing to allow on their mortgage
by reason of the redemption. After that was done, the
decree foreclosing their mortgage was rendered, and
was for the full amount of their claims, notwithstand-
ing the credit given as aforesaid. The plaintiff per-
mitted the second foreclosure without having a credit

of one thousand five hundred dollars allowed on the Zwilling Bros.' mortgage because Zwilling Bros. agreed that they only held the land in trust, and that the foreclosure of their mortgage was designed only to strengthen their title, and to extinguish certain liens which had not been cut off by the Binford foreclosure, and that the proceeding was not adversary between them and the plaintiff. H. A. Zwilling is now dead, and his heirs are made parties defendant with the surviving partner. Before this action was commenced, the plaintiff tendered to the defendants the sum he admits to be due, and avers that he is willing and ready to pay the full amount due, and offers to do so upon a reconveyance of the land to him. The plaintiff asks an accounting, that he be allowed to redeem the land, and that upon full payment the defendants be required to convey it to him, and for a full performance of the verbal agreement pleaded. The demurrer is both general and specific, and is based upon the following grounds: *First.* That the agreement relied upon by the plaintiff is within the statute of frauds: *second,* that the plaintiff relies upon an express trust, which was not declared or created by writing executed in the manner provided by statute; *third,* that the rights of the parties were adjudicated in the second foreclosure proceedings; *fourth,* that the transaction was fraudulent as against the creditors of the plaintiff.

I. Section 1934 of the Code is as follows: "Declarations, or creations of trusts or powers, in relation to real estate, must be executed in the same manner as deeds of conveyance, but this provision does not apply to trusts resulting from the operation or construction of law." Trusts arising by implication of law are sometimes divided into two classes: *First.* Those which are said to result by operation or presumption of law from certain acts or relations of parties from which

an intention to create a trust is supposed to exist, and which are called "resulting" or "presumptive" trusts. *Second.* Those which exist by construction of law alone, without any actual or supposed intention that a trust should be created, but merely to assert the rights of parties or baffle fraud. They are called "constructive" trusts. Resulting trusts may arise: "*First,* where a purchaser pays the purchase price, but takes the title in the name of another; *second,* where a trustee or other fiduciary buys property in his own name, but with trust funds; *third,* where the trusts of a conveyance are not declared, or are only partially declared, or fail; and *fourth,* where a conveyance is made without any consideration, and it appears from the circumstances that the grantee was not intended to take beneficially." Bispham, Eq. sections 78, 79; 10 Am. & Eng. Enc. Law, 4; 1 Perry, Trusts, 124 *et seq.* It is said in 10 Am. & Eng. Enc. Law, 60, that "constructive trusts may be divided into three classes, to be determined according to the circumstances under which they arise: *First,* trusts that arise from actual fraud; *second,* trusts that arise from constructive fraud; *third,* trusts that arise from some equitable principle, independent of the existence of fraud." Bispham includes in constructive trusts none which have any element of fraud, preferring to treat those in which fraud is involved under the head of "Fraud." Bispham, Eq. section 91. His classification corresponds with that which is permissible under the last part of section 1934 of the Code. In fact it is usual to speak of all the trusts for which it provides as resulting trusts. This case does not fall within any of the classes of resulting or implied trusts enumerated. It is not claimed that at the time Zwilling Bros. took their mortgage the agreement set out in the petition was made or contemplated. So far as is shown, all the

money which they invested in redeeming the land from tax sale, in paying taxes, and in redeeming from the Binford sale belonged to them. There was nothing in the fact that they used their money as specified to indicate in any manner that the money was not used for their own purposes, rather than for the benefit of the plaintiff. They had a legal right to protect their mortgage interest in the land by making the redemption stated, and by paying the taxes. The only money of the plaintiff which they received was that which he paid to them under his leases, which treated it as due for rent, and four hundred and fifty dollars, paid them in October, 1888. What use was made by Zwilling Bros. of that sum and the money paid under the leases is not shown. But there can be no resulting trust in this case, for the reason that the plaintiff relies upon an express agreement. Bispham, Eq. section 80. An express trust cannot be established by parol. *Andrew v. Concannon*, 76 Iowa, 253; *Brown v. Barngrover*, 82 Iowa, 204; *McClain v. McClain*, 57 Iowa, 169.

4    Fraud which would authorize us to treat the transaction between the plaintiff and Zwilling Bros. as creating a trust is not pleaded. The refusal by the latter to perform their agreement, and their denial of its existence, do not constitute such fraud. *McClain v. McClain*, 57 Iowa, 170; *Kellum v. Smith*, 33 Pa. St. 165; *Barnet v. Dougherty*, 32 Pa. St. 372; *Minot v. Mitchell*, 30 Ind. 228; *Acker v. Priest*, 92 Iowa, 610. The plaintiff contends that the facts pleaded show that Zwilling Bros. acquired title to the premises in question to hold as security for the payment of money, and that they should be treated as mortgagees. But they acquired no interest in the premises from any act of the plaintiff, performed after the mortgage to them was made. He had no power to prevent the sheriff's sales, and they acquired nothing from him by virtue of the

agreement excepting the money paid, as we have already stated, after they had acquired title by sheriff's deed. We are of the opinion that the title of the defendants is not merely that of a mortgagee. *Hain v. Robinson,* 72 Iowa, 735; *Thorp v. Bradley,* 75 Iowa, 51. We conclude that the transaction alleged must be treated as creating an express trust, which cannot be proved by parol. *Ratliff v. Ellis,* 2 Iowa, 60; *Burden v. Sheridan,* 36 Iowa, 133; *McGiness v. Barton,* 71 Iowa, 644; *Batsford v. Burr,* 2 Johns. Ch. 415; *Cobb v. Cook,* 49 Mich. 11, 12 N. W. Rep. 891. The appellant cites numerous cases in support of his claims, but we think none of them can be justly regarded as authority against the conclusion we reach.

It may be well to state that, although it does not clearly appear for what purpose the payment of four hundred and fifty dollars in October, 1888, was made, no special claim is set out for it in the petition nor in argument, and it appears to have been treated as other payments for rent. Zwilling Bros. obtained a sheriff's deed for the land November 21, 1887, and the credits claimed by the plaintiff in addition to that of four hundred and fifty dollars are five annual payments of one thousand and fifteen dollars each. The total amount of the credits is not more than the rent to which Zwilling Bros. would have been entitled at the agreed rate. No claim is made in the petition nor in argument that the transaction in question was a contract for the creation or transfer of an interest in lands under which the credits claimed should be treated as a part of the purchase money.

The plaintiff relies upon a trust. We find it unnecessary to determine other questions raised by the demurrer and presented in argument. If the averments of the petition are true, the conclusion we reach

involves hardship to the plaintiff, but it appears to be unavoidable, and due wholly to his own negligence.

II.   The appellant complains of the additional abstract filed by the appellee, and asks that it be stricken from the files, or that at least portions of it be stricken out.   We are of the opinion that, although it sets out some material facts, yet that nearly all of it was unnecessary.   The motion to strike will be overruled, but costs for the additional abstract to the amount of seven dollars will be taxed to the appellees. The judgment of the district court is *affirmed*.